STEPHEN CURTIS *vs.* THOMAS J. GARDNER.

A., the owner of land, with a mill privilege, grist mill and dam thereon, made an oral agreement, with B. and C., to build a saw mill on said land and dam, one half by A. and the other half by B. and C., and to use the same jointly, until it should run down; and the saw mill was built and used, according to said agreement, for several years, when A. conveyed to D. his land, grist mill and dam, "and also one half the saw mill, with all the appurtenances and privileges to the said half saw mill belonging; the said saw mill being in common and undivided with B. and C., owners of the other half, who have the privilege of using the same, in equal shares with the said D., until it shall run down:" and D. conveyed to E. the said land, with all his right, title and interest in and to the grist mill and saw mill standing thereon, "being the same premises conveyed by A. to said D.:" A., after the death of B. and C., conveyed to their heirs "one half of a saw mill, being in common and undivided with D., and being the same that said A. reserved to B. and C. in his deed to D.:" E. refused to permit said heirs to use the saw mill, and they brought a real action to recover possession of a moiety thereof. *Held*, that the deed from A. to D. reserved to B. and C. only a life estate in the land on which the saw mill stood, and that the action could not be maintained.

THIS was a writ of entry, to recover "one eighth part of a messuage" in Scituate, to wit, a saw mill, wheel, wheel floors, saws, right of taking water from the pond adjoining, and other privileges and appurtenances thereto belonging. The tenant pleaded the general issue, (nul disseizin,) and filed a specification of defence, asserting title in himself, and denying title in the demandant.

At the trial before *Hubbard*, J. the parties agreed that Elijah Clap 2d was the owner of a tract of land, lying partly

in Hanover and partly in Scituate, upon both sides of a brook which divides those towns, and of a water privilege, dam and grist mill thereon ; that in August 1815, said Clap and Peleg Curtis and Joseph Curtis built a saw mill on said dam, which was the same mill mentioned in the demandant's writ; that said Clap paid one half, and said Peleg and Joseph the other half, of the expenses of said mill ; that it was repaired by them in the same proportions, until said Clap conveyed his estate in the premises to Edward Curtis, by deed dated December 9th 1831 ; that said deed conveyed eight and a half acres of land, describing it by metes and bounds, and contained the following clauses : "A part of which is now covered by the pond, together with the mill dam, the grist mill, with the wheel, floom, and the appurtenances and privileges to the said grist mill belonging. Also one half the saw mill, with one half the wheel, floom, saws, and all other appurtenances and privileges to the said half saw mill belonging ; which said dam and mills are standing on said premises ; with all other privileges and appurtenances to the same belonging. The said saw mill being in common, and undivided, with Peleg and Joseph Curtis, (owners of the other half,) who have the privilege of using the same in equal shares with the said Edward, until it shall run down, and taking water for that purpose, when it is not wanted for the use of the grist mill."

It was admitted or proved, that after the abovementioned conveyance was made to Edward Curtis, he and Peleg and Joseph Curtis had the use of the saw mill in alternate years commencing January 1st 1832 ; that in 1832 and 1834, said Edward used and repaired the saw mill, and that said Peleg and Joseph used and repaired it in 1833 ; that said Joseph died intestate, on the 9th of November 1834, and that, in the inventory of his estate, one fourth of said saw mill was put down as real estate ; that said Peleg died on the 22d of June 1835, having devised his estate, *first* to his wife for life, *secondly* one moiety to his son Philip for life, then to Philip's wife for life, and the other moiety to the widow of his son

Stephen for life, and *thirdly* one moiety of the estate to the children of Stephen deceased, and the other moiety to the children of Philip ; that the saw mill was used by the Curtises and their heirs, during the year 1835 ; and that, on the 26th of June 1835, Edward Curtis conveyed to Thomas J. Gardner (the tenant) the aforesaid eight and a half acres, together with all his right, title and interest in and unto the saw mill and grist mill standing thereon — being the same premises that were conveyed by Elijah Clap 2d to said Edward Curtis.

It appeared that said Elijah Clap 2d, on the 19th of October 1835, conveyed to "the heirs of Peleg and Joseph Curtis" (but not naming them) "one half of a saw mill, with one half of the wheel, floom, saws and all other appurtenances and privileges to the said half saw mill belonging, being in common and undivided with Edward Curtis, and it being the same that I, the said Clap, reserved to said Peleg and Joseph Curtis, in my deed to said Edward Curtis — reference to be had to the same for a more particular description."

It also appeared that on the 23d of September 1836, the widows of Joseph Curtis and Peleg Curtis, by deed of that date, conveyed to Thomas J. Gardner (the tenant) all their right, title and interest in and to the mill built by Elijah Clap 2d and Peleg and Joseph Curtis, for the sum of $80 ; he paying all bills of repairs since 1833.

It appeared that the widows of Peleg and Joseph Curtis confirmed the deed and agreement aforesaid, of September 23d 1836, by a deed, made by them on the 6th of October 1836, conveying to said Gardner (the tenant) one undivided half of the saw mill, with the privileges and appurtenances, referring, in said deed, to Clap's deed of December 9th 1831.

It also appeared that the tenant was in possession and use of the saw mill in 1836, and has been ever since ; that the widow of Peleg Curtis died on the 14th of December 1845, and that in the division of said Peleg's real estate, in 1846, his share of said saw mill was set to Stephen Curtis (the demandant) and to H. J. Curtis.

It was agreed by the parties, that said Elijah Clap — being released from his covenants, by the tenant — would testify, *if such testimony be competent,* " that in 1815 he made an oral agreement with Joseph and Peleg· Curtis to build a saw mill on his land and dam, the same to be built, half by him and half by them, and to be improved ·by them jointly until it should run down, and taking water for that purpose from his pond, when it was not wanted for the grist mill to grind twelve bushels of grain ; and that when said saw mill should run down, the said Joseph and Peleg should contribute to him one half the expense to make the dam as good as it was before the saw mill was built ; and that, in 1831, he told Joseph Curtis that the mill was no profit to him, and that he should put no more repairs upon it ; that he should let it go down."

Upon the foregoing facts, the judge advised a nonsuit, which was entered, subject to the opinion of the whole court.

*P. Simmons,* for the demandant.

*J. H. Loud & Clifford,* for the tenant. .

WILDE, J.    At the trial of this cause, it was agreed by the parties that Elijah Clap 2d was the owner of a tract of land, including the demanded premises, and that, in August 1815, he, with· Peleg and Joseph Curtis, built the saw mill, described in the demandant's writ, on a dam crossing a stream within said tract of land.    Afterwards, in 1831, said Clap conveyed the· said tract of land, with one half of said saw mill, to Edward Curtis, reserving the other half by the following clause in the deed :  " The said saw mill being in common and undivided with Peleg and Joseph Curtis, (the owners of the other half,) who have the privilege of using the same in equal shares with the said Edward until it shall run down, and taking water for that purpose when it is not wanted for the use of the grist mill."

Whatever might be the intention of the. parties to this conveyance, it is very clear, that nothing was reserved in the land but an estate for life, during the lives of the said Peleg and Joseph Curtis, and the life ·of the survivor; and as both have since deceased, the demandant's title, who claims under

them, fails. It is true that only one half of the saw mill was conveyed to Edward Curtis, and the other half has been conveyed to the heirs of Peleg and Joseph Curtis, of whom the demandant is one. Whether they have a right to a half of the mill, considered as personal property, and, if they have, what remedy they may have against the tenant, if he should refuse to suffer them to occupy, are questions not to be decided in the present case. But as to the title to the land, the rule of law is inflexible. To create an estate of inheritance by deed, except by a deed to a corporation, and one or two other special exceptions not applicable to this case, the land must be conveyed to the grantee *and his heirs;* and no words of perpetuity will supply the omission of these necessary words of limitation. A grant to a man to have and to hold to him forever, or to have and to hold to him and to his assigns forever, will convey only an estate for life. Lit. § 1. 2 Crabb on Real Property, §§ 955, 956. *Wright* v. *Dowley,* 2 W. Bl. 1185. *Gould* v. *Lamb,* 11 Met. 86. And the same rule applies to words of reservation or exception. If the reservation had been to Clap and his heirs, for the use of Peleg and Joseph Curtis, until the mill should run down, that would have been the reservation of a determinable estate in fee; but the words " his heirs " are as essential in the res-ervation of such an estate, as in that of an absolute fee simple

*Nonsuit confirmed.*